IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALAIN ABDO, et al.,                    :

    Plaintiffs,                      :

v.                                     :          Civil Action No. GLR-17-1053

MICHAEL R. POMPEO, et al.,             :

    Defendants.                      :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs Alain Abdo, M.D., Maha Akiki, and J.A.'s Motion to Alter Judgment to Consider and Adjudicate Counts II–IX of the Plaintiffs' Complaint (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court granted the Motion. (Mar. 28, 2019 Order, ECF No. 23).

## I.    BACKGROUND[1]

On June 9, 2010, Dr. Abdo entered the United States as a nonimmigrant alien exchange visitor on a J-1 visa under 8 U.S.C. § 1101(a)(15)(J)[2] for graduate education

---

[1] The Court set out the facts of this case in its March 30, 2018 Memorandum and Order. (ECF No. 15). The Court repeats only facts necessary to resolve the pending Motion. Unless otherwise noted, the Court takes the facts from Plaintiffs' Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[2] Section 1101(a)(15)(J) covers "an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Director of the United States Information Agency, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving

sponsored by the Educational Commission for Foreign Medical Graduates ("ECFMG"). (Compl. ¶¶ 25–26, ECF No. 1). Dr. Abdo and Akiki married in 2012. (Id. ¶ 28). Akiki entered the United States with a J-2 nonimmigrant exchange visitor visa as a result of Abdo's J-1 visa. (Id. ¶ 85). Akiki gave birth to a daughter, M.A., in 2013,[3] and a son, J.A., in 2015, in the United States. (Id. ¶¶ 28–30).

Under 8 U.S.C. § 1182(e), an exchange student such as Dr. Abdo must return to his home country for at least two years after finishing his training. Section 1182(e) permits waivers of the two-year foreign residency requirement under certain limited circumstances, including "upon the favorable recommendation" of the United States Department of State ("DoS") and a request by a Director of the United States Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1182(e).

On April 14, 2016, Dr. Abdo submitted an application to USCIS for an exceptional hardship waiver of the two-year foreign residency requirement. (Compl. ¶ 41). In his application, Dr. Abdo asserted that returning to Lebanon, his home country, for two years would cause an exceptional hardship for his children, who were American citizens. (Id. ¶¶ 43–45). In a letter sent to USCIS on February 27, 2017, the DoS recommended that USCIS deny the application because "[t]here's a need for trained medical professionals in General Surgery" in Lebanon "as evidenced by the Letter of Need" from its government.

---

training and who, if he is coming to the United States to participate in a program under which he will receive graduate medical education or training, also meets the requirements of section 1182(j) of this title, and the alien spouse and minor children of any such alien if accompanying him or following to join him." 8 U.S.C. § 1101(a)(15)(J).

[3] M.A. died in Lebanon on March 20, 2017. (Compl. ¶ 15).

(Defs.' Mot. Dismiss ["Defs.' Mot."] Ex. B, ECF No. 10-3). Accordingly, USCIS denied Dr. Abdo's application on February 27, 2017. (See Compl. ¶ 102; Defs.' Mot. Ex. B).

On April 17, 2017, Plaintiffs filed their nine-count Complaint, alleging: the denial of Dr. Abdo's waiver application was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 et seq. (2018) (Count I); the DoS and USCIS regulations that subject J-2 visa holders to the two-year residence requirement violated 5 U.S.C. § 553 when promulgated and are inconsistent with 8 U.S.C. § 1182(e) (Count II); violations of the Due Process Clause of the Fifth Amendment to the United States Constitution (Counts III–V); Failure to Follow More Relaxed Adjudication Standard Intended by Congress (Count VI); Failure to Provide Reasoned Analysis Describing a Marked Change in Policy in the Adjudication of ECFMG-Sponsored I-612 Hardship Waiver Cases (Count VII); Violation of Treaty (Count VIII); and Declaratory Judgment (Count IX). (Compl. ¶¶ 101–160). Plaintiffs seek declaratory judgments, injunctive relief, and attorneys' fees and costs. (Id. at 31–32).

On August 28, 2017, Defendants filed a Motion to Dismiss, arguing for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim under Rule 12(b)(6). (ECF No. 10). On March 30, 2018, the Court granted the Motion, concluding that it did not have subject-matter jurisdiction to consider Defendants' decision to deny Dr. Abdo's exceptional hardship waiver application, and directed the Clerk to close the case. (Mar. 30, 2018 Mem. & Order at 3, ECF No. 15).

On April 25, 2018, Plaintiffs filed their Motion to Alter Judgment to Consider and Adjudicate Counts II–IX of the Plaintiff's Complaint. (ECF No. 16). On June 18, Defendants filed an Opposition. (ECF No. 21). On June 27, 2018, Plaintiffs filed a Reply. (ECF No. 22).

## II.     DISCUSSION

### A.     Motion to Alter Judgment

#### 1.     Standard of Review

Rules 59(e) and 60(b) govern motions to reconsider final judgments. See Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991). Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC 13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). If the Motion is filed later, Rule 60(b) controls. Id. Plaintiffs filed their Motion twenty-six days after the Court's March 30, 2018 Memorandum and Order. Accordingly, Rule 59(e) controls here.

A district court may only alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." United States ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 (4th Cir. 2017) (citing Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). The purpose of Rule 59(e) is to "permit[ ] a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" Pac.

Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 196, 403 (4th Cir. 1998) (citing Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)).

**2.      Analysis**

Plaintiffs argue that the Court's conclusion regarding its lack of jurisdiction to hear Count I does not have any effect on the Court's jurisdiction over the remaining counts. As a result, Plaintiffs assert, the Court should not have dismissed Counts II–IX. Defendants counter that because the Court concluded that it did not have jurisdiction to hear Count I, it was correct in dismissing the Complaint in its entirety. The Court agrees with Plaintiffs.

In its March 30, 2018 Memorandum and Order, the Court concluded that 5 U.S.C. § 702(a)(2) foreclosed judicial review of Count I—Defendants' decision to deny Dr. Abdo's exceptional hardship waiver application. (Mar. 30, 2018 Mem. at 3).[4] Because the Court lacked subject-matter jurisdiction over Count I, it granted Defendants' Motion to Dismiss as to the remaining counts without considering them on the merits. (Id.). That conclusion was erroneous because the Court must determine whether it has subject-matter jurisdiction on a claim-by-claim basis. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 305 (4th Cir. 2009) (remanding certain claims for dismissal for lack of subject-matter jurisdiction but remanding remaining claim for further proceedings); see also Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) (noting that "[i]t is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court" (emphasis added)); United States ex rel. Wilson v. Graham Cty. Soil & Water

---

[4] Plaintiffs do not challenge that conclusion in their Motion.

Conservation Dist., 528 F.3d 292, 309 (4th Cir. 2008) (citing Boothe v. Sun Healthcare Grp., Inc., 496 F.3d 1169, 1177 (10th Cir. 2007)) ("The district court's analysis should thus proceed on a claim-by-claim basis, individually addressing [each claim] and explaining whether the court has jurisdiction over that claim"), rev'd on other grounds by Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280 (2010).

Nevertheless, Defendants contend that if the Court lacks subject-matter jurisdiction over one claim, it must dismiss the entire case. To support this proposition, Defendants cite to Arbaugh v. Y&H Corp., which states that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." 546 U.S. 500, 514 (2006). In relying on that sentence, Defendants make a similar argument to that made in U.S. Equal Opportunity Comm'n v. Dillard's Inc.. No. 08-CV-1780-IEG PCL, 2011 WL 2784516, at *4 (S.D.Cal. July 14, 2011). In that case, the U.S. District Court for the Southern District of California explained that such reliance is "misplaced . . . as it stretches the sentence into a broader statement of law than the context of the sentence suggests was intended." Id. at 4 n.1. In Arbaugh, the U.S. Supreme Court was considering whether Title VII's numerical threshold was a jurisdictional requirement or one that went to the merits of the claim. 546 U.S. at 513–14. The Arbaugh Court noted that when a district court concludes that it lacks subject-matter jurisdiction over a federal claim because jurisdictional prerequisites have not been met, the court must dismiss that claim as well as any pendent state-law claims. Id. at 514. Arbaugh did not address the situation confronting the Court here, or that confronted the Dillard's Court: "whether a federal court can limit the scope of federal claims before it where it finds that a plaintiff has satisfied jurisdictional

6

prerequisites for only some federal claims." Dillard's, 2011 WL 2784516, at *4 n.1. As the

Dillard's Court noted, a district court, which has the inherent power to control its docket,

is only obliged to dismiss claims over which it lacks subject-matter jurisdiction, and Rule

12(b)(1) does not require otherwise. Id. at *4.

After concluding that the Court did not have subject-matter jurisdiction to hear Dr.

Abdo's APA claim in Count I, the Court, therefore, should have considered whether it had

jurisdiction over, and possibly the merits of, the Complaint's remaining counts. For that

reason, the Court shall correct its error by granting Plaintiffs' Motion and reconsidering its

March 30, 2018 Memorandum and Order granting Defendants' Motion to Dismiss and

dismissing the Complaint in its entirety. Halliburton Co., 866 F.3d at 210; Pac. Ins., 148

F.3d at 403.

Because Plaintiffs do not challenge the Court's dismissal of Count I for lack of

subject-matter jurisdiction, the Court will limit the analysis of Defendants' Motion to

Dismiss to its Rule 12(b)(6) arguments.

**B.    Motion to Dismiss**

**1.    Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint,"

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City

of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it

does not contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible

on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## 2.    Analysis

In its March 30, 2018 Memorandum and Order, the Court concluded that the denial of Dr. Abdo's exceptional hardship waiver application is not subject to judicial review

because, under 5 U.S.C. § 702(a)(2), there was "no meaningful standard against which to judge" the denial. (Mar. 30, 2018 Mem. & Order at 3). Plaintiffs' only other APA count, Count II, challenges the regulations that govern Akiki's and J.A.'s visas. Counts III–IX raise constitutional and procedural challenges to the J-I and J-2 visa schemes. The Court concludes that, as alleged in the Complaint, it has subject-matter jurisdiction over Plaintiffs' remaining counts under 28 U.S.C. §§ 1331, 1361 (2018). The Court will consider each count in turn.

### a.     Rulemaking Violation of APA (Count II)

Plaintiffs[5] make two pairs of claims in Count II of their Complaint, one pair about the DoS regulation, 22 C.F.R. § 41.62(c)(4), and one pair about the USCIS regulation, 8 C.F.R. § 212.7(c)(4). Plaintiffs contend that each regulation is invalid because the agency that promulgated it did not engage in formal rulemaking under 5 U.S.C. § 553 and because each regulation is inconsistent with the authorizing statute, 8 U.S.C. § 1182(e). The Court disagrees.

### i.     Notice-and-Comment Rulemaking Requirement

### aa.     22 C.F.R. § 41.62(c)(4)

Defendants argue that the DoS regulation, 22 C.F.R. § 41.62(c)(4), is exempt from the APA's notice-and-comment rulemaking requirements because it concerns foreign affairs. Plaintiffs do not address Defendants' argument. Instead, they allege, for the first time in their Opposition, that the DoS did not have the authority to promulgate the

---

[5] The Complaint does not specify which Plaintiffs bring this count, but it stands to reason that the J-2 visa holders, Akiki and J.A., are the relevant Plaintiffs for this count.

regulation, via any process. Plaintiffs are, however, "bound by the allegations contained in [their] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). Here, Plaintiffs plead in their Complaint that the DoS violated 5 U.S.C. § 553 by promulgating its regulation without the APA's notice-and-comment process. Defendants argue the regulation was exempt from formal notice-and-comment rulemaking under § 553. Plaintiffs counter with a new, broader claim—that the DoS was not authorized to promulgate this regulation at all, under notice-and-comment rulemaking or otherwise. But this allegation is not in the Complaint. Accordingly, the Court declines to consider it.

Further, "by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim." Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012). By raising new allegations instead of countering Defendants' argument, Plaintiffs effectively abandoned their § 553 claim. The Court, therefore, deems Plaintiffs' procedural challenge to 22 C.F.R. § 41.62(c)(4) abandoned. Thus, the Court will grant the Motion as to Plaintiffs' challenge to this regulation without deciding whether the foreign affairs exemption applies.

### bb.   8 C.F.R. § 212.7(c)(4)

Defendants contend that 8 C.F.R. § 212.7(c)(4)—the USCIS regulation—was issued to conform with the DoS regulation, and therefore it constitutes a rule of agency procedure or practice that is exempt from APA notice-and-comment rulemaking. Plaintiffs again counter with the allegation that the DoS did not have authority to promulgate its regulation. As a result, Plaintiffs assert, § 212.7(c)(4) is also faulty. For the reasons stated

above, the Court consider Plaintiffs' argument regarding § 212.7(c)(4) abandoned. The Court will, therefore, grant Defendants' Motion as to § 212.7(c)(4).

In sum, because Plaintiffs fail to address Defendants' arguments regarding the DoS and USCIS regulations and instead attempt to bring new allegations, the Court concludes that Plaintiffs have abandoned this claim.

### ii.     Inconsistency with Authorizing Statute

Plaintiffs also allege that the USCIS and DoS regulations are inconsistent with their authorizing statute, 8 U.S.C. § 1182(e). Defendants contend that § 1182(e) is either ambiguous or silent regarding the applicability of the two-year foreign residence requirement to J-2 beneficiaries and that the agencies' interpretations of the statute should be afforded <u>Chevron</u>[6] deference. Plaintiffs counter that § 1182(e) is not ambiguous and does not make J-2 beneficiaries subject to the two-year foreign residence requirement. As a result, Plaintiffs argue that the Court should not defer to the agencies' interpretation. The Court agrees with Defendants. Because the regulations are nearly identical, the Court's analysis of the DoS regulation, with which USCIS sought to conform two months later, applies to both regulations.

The first step under <u>Chevron</u> is to determine "whether Congress has directly spoken to the precise question at issue." <u>Chevron U.S.A. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984). To answer this question, "'we focus purely on statutory construction without according any weight to the agency's position,' relying on the plain language of

---

[6] <u>Chevron U.S.A. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

the statute as the 'most reliable indicator of [c]ongressional intent.'" People for the Ethical Treatment of Animals v. USDA, 861 F.3d 502, 507 (4th Cir. 2017) (quoting Sijapati v. Boente, 848 F.3d 210, 215 (4th Cir. 2017)). If Congress has spoken directly to the precise question at issue, then the court and the agency must "give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43. If Congress has not, that is, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. Importantly, to uphold the agency's construction of the statute, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted . . . , or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11.

### aa.     Is § 1182(e) ambiguous or silent?

The statute in question, 8 U.S.C. § 1182(e), prohibits certain J-visa holders from applying for permanent residence unless they meet certain conditions. Specifically, § 1182(e) targets any J-visa holder:

> . . . (i) whose participation in the program for which he came to the United States was financed in whole or in part, directly or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or his last residence, (ii) who at the time of admission or acquisition of status under section 1101(a)(15)(J) of this title was a national or resident of a country which the Director of the United States Information Agency, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons engaged in the field of specialized knowledge or skill in which the alien was engaged, or

> (iii) who came to the United States or acquired such status in order to receive graduate medical education or training. . .

8 U.S.C. § 1182(e).

The statute prohibits any such person from applying for permanent residence until he either: (1) "has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States"; or (2) has had the residency requirement waived by the Attorney General after "the foreign country of [his] nationality or last residence" has stated in writing that "it has no objection to such waiver." Id.

The parties acknowledge that, by its terms, the statute subjects J-1 visa holders, like Dr. Abdo, to the two-year foreign residency requirement. But it does not state that J-2 visa holders, spouses or children like Akiki and M.A., are subject to the same requirement.[7] As a result, the Court concludes the statute's plain language is silent with respect to the specific issue of the applicability of the two-year foreign residence requirement to J-2 visa holders. USDA, 861 F.3d at 507.

---

[7] Plaintiffs rely on a law review article that charts the statute's legislative history to suggest the congressional intent behind this silence. See Naomi Schorr & Stephen Yale-Loehr, The Odyssey of the J-2: Forty-Three Years of Trying Not to Go Home Again, 18 Geo.Immigr.L.J. 221 (2004). The Odyssey of the J-2 traces the post-World War II origins of these educational exchange programs, the passage of the Immigration and Nationality Act of 1952, the 1961 amendments that created section (J) and subsection (e), and the 1970 amendments that resulted in the current form of § 1182(e). But that history does not change the statute's silence with respect to J-2 visa holders.

### bb.     Is the DoS interpretation of § 1182(e) permissible?

The next step, then, is to determine whether DoS's interpretation of § 1182(e) "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. The DoS regulation provides that "the spouse or child" of "an alien . . . subject to the [two]-year foreign residence requirement of [§ 1182(e)]" and "accompanying or following to join the alien, is also subject to that requirement if admitted to the United States" under a J visa. 22 C.F.R. § 41.62(c). The USCIS regulation, meant to conform with the DoS regulation, provides that "[a] spouse or child admitted to the United States or accorded status under [a J visa] to accompany or follow to join an exchange visitor who is subject to the foreign residence requirement of section 212(e) of the Act is also subject to that requirement." 8 C.F.R. § 212.7(c)(4).

Though there is scant case law on this issue, the Court is not the first to consider these regulations. In Boire v. Johnson, the U.S. District Court for the Eastern District of Missouri concluded that the DoS and USCIS interpretations of the foreign residence requirement of § 1182(e) as applying to J-2 visa holders were reasonable. No. 4:15CV0660 TCM, 2015 WL 5431973, at *3–4 (E.D.Mo. Sept. 15, 2015). The court held that the regulations are not contrary to the statutory language and that "[a]ny ambiguity created by § 1182(e)'s further qualification of the persons to whom it applied" has been reasonably construed by the DoS and USCIS as not excusing J-2 visa holders from the two-year foreign residence requirement. Id. at *4.

In support of its conclusion, the Boire court cited Sheku-Kamara v. Karn, 581 F.Supp. 582 (E.D.Pa. 1984), a case decided months before Chevron, in which the Eastern

14

District of Pennsylvania considered whether the wife and son of a J-1 visa-holder were subject to the two-year foreign residency requirement. The Sheku-Kamara court concluded that the USCIS regulation, 8 C.F.R. § 212.7(d)(4), governed the case but gave additional reasons for why J-2 visa holders should be subject to the two-year foreign residence requirement. First, concluding that J-2s are subject to the same requirement avoided "the anomalous result of putting [J-2s] . . . in a better position than [the J-1] who remain[ed] subject to the two[-]year requirement." Sheku-Kamara, 581 F.Supp. at 584. Second, concluding that J-2s are subject to the two-year foreign residency requirement was consistent with one of the program's primary objectives, that is, "to facilitate the impartation of live impressions of the United States and its culture to other societies." Id. at 584–85. The court also cited an administrative decision, Matter of Tabcum, 14 I. & N. Dec. 113 (B.I.A. 1972), which concluded the 1970 amendments to the Immigration and Nationality Act of 1952 did not change the applicability of the two-year foreign residency requirement to J-2s. Tabcum reasoned that interpreting § 1182(e), as amended, to excuse J-2s from the two-year foreign residency requirement would create "back-door access" for J-1s to obtain hardship waivers on the basis of separation from their spouse or children staying in the United States, which would not be in the spirit of the statute. 14 I. & N. Dec. at 115.

The Court agrees with the reasoning of Sheku-Kamara and Boire and concludes the DoS and USCIS regulations are reasonable interpretations of § 1182(e). Plaintiffs' argument that the statute's silence regarding J-2s means that Congress unambiguously intended to exempt J-2s from the two-year residency requirement leaves out the role of

administrative interpretation. <u>Chevron</u>, 467 U.S. at 843 n.11 (holding that, once "the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation"). Here, the DoS, and then USCIS, issued regulations that made J-2s subject to the two-year foreign residency requirement, which is consistent with the statute that makes J-1s subject to the same requirement and is silent with respect to J-2s.

Plaintiffs ask the Court to read between the lines in the legislative history and declare Congress's intent clear with respect to J-2s when the statute's plain language is not. But when Congress has "not directly addressed the precise question at issue, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843. Here, the DoS and USCIS interpretation is reasonable, and therefore, the Court must uphold it even if it is not the interpretation the Court would adopt. <u>Id.</u> at 843 n.11.

In sum, Plaintiffs' challenges to 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4) fail. As a result, the Court will grant Defendants' Motion to Dismiss with respect to Count II.

### b.      Due Process Violations (Counts III–V)

The Complaint seeks relief under three separate due process theories: right to life (Count III); right to family unity (Count IV); and a property interest in the application fees Dr. Abdo paid to the DoS and in the visa waiver itself (Count V). Defendants only discuss

the alleged property interest in their Motion. Accordingly, the Court will discuss that count first, then turn to the two counts Defendants do not contest.

### i. Property Interest (Count V)

The Complaint appears to make two sub-claims in Count V: (1) "Dr. Abdo has a property interest in the application fees he paid to the State Department," (Compl. ¶ 123); and (2) the denial of his application "without any rational basis violates his right to due process of law under the Fifth Amendment to the United States Constitution," (id. ¶ 124). Defendants argue Plaintiffs do not have a cognizable property interest in the waiver of the two-year home country residence requirement, and therefore, they fail to state a due process claim. Defendants do not explicitly address Plaintiff's alleged property interest in the DoS application fees until their Reply where they assert that payment of the fees created no interest beyond the adjudication of Abdo's waiver application, which he received. Plaintiffs maintain that a hardship waiver applicant has both a property interest in the application fees and "a legal right to an adjudication where the [DoS] considers the program, policy, and foreign relations considerations under 22 C.F.R. § 41.63(b)(2)(ii)." (Pls.' Opp'n at 27, ECF No. 11). The Court agrees with Defendants that Plaintiffs do not have a property interest in the granting of the application and, as a result, fail to state a due process claim.

To plead a due process claim, a plaintiff "must first establish that he had a property or liberty interest at stake." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002) (citing Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993)). For a statute to create such a vested interest, "it must confer more than a mere expectation (even one supported by consistent government practice) of a benefit." Id. (citing Mallette v. Arlington Cty. Emps.' Suppl.

Ret. Sys. II, 91 F.3d 630, 635 (4th Cir.1996). "There must be <u>entitlement</u> to the benefit as directed by statute, and the statute must 'act to limit meaningfully the discretion of the decision-makers.'" <u>Id.</u> (quoting <u>Mallette</u>, 91 F.3d at 635). The United States Court of Appeals for the Fourth Circuit has held that discretionary statutory "rights" do not create interests protected by the Due Process Clause of the Fifth Amendment. <u>See</u> <u>Appiah v. INS</u>, 202 F.3d 704, 709 (4th Cir. 2000) (holding the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause).

Here, Plaintiffs fail to plead a property interest protected by the Due Process Clause of the Fifth Amendment. Even if Plaintiffs have a property interest in the fees paid, as Defendants appear to concede, Plaintiffs' claim that "Defendants' denial of Dr. Abdo's waiver application without any rational basis" violates Fifth Amendment due process is unsupported for at least two reasons. First, the DoS recommendation and USCIS approval are both discretionary. <u>See</u> 8 U.S.C. § 1182(e); 22 C.F.R. § 41.63; 8 C.F.R. § 212.7. Plaintiffs therefore have no property interest in the benefit they seek under that statute and those regulations. <u>Smith</u>, 295 F.3d at 429; <u>Appiah</u>, 202 F.3d at 709. Second, USCIS provided a rational basis for its denial, noting that Lebanon needs general surgeons like Abdo to return under the terms of his visa.

The Court, therefore, concludes that Plaintiffs do not identify a cognizable property interest protected by the Due Process Clause of the Fifth Amendment. As a result, the Court will grant Defendants' Motion as to Count V.

### ii. Right to Life and Right to Family Unity (Counts III & IV)

Defendants never directly address whether there are due process rights to life or family unity, and, if so, whether Defendants violated them.[8] Defendants merely note in their Reply that their actions have not prevented J.A., an American citizen, from living with his parents in Lebanon, and that Plaintiffs' right to life theory is "speculative." (Defs.' Reply at 18–19). Accordingly, the Court will deny the Motion as to Counts III and IV.

### c. More Relaxed Adjudication Standard (Count VI)

Defendants argue that Plaintiffs' claim regarding the standard the DoS used does not state a basis upon which the Court could grant relief because Defendants were not required to consider Abdo's "knowledge, heritage, or culture" or to apply "a more liberal standard" in deciding Abdo's waiver application. (Defs.' Mot. at 31). Plaintiffs counter that because Abdo "imparted his already acquired knowledge, heritage, and culture" during his time in the United States, the DoS should have applied a more liberal standard like it did in two other cases from the 1960s. The Court agrees with Defendants.

The basis for Plaintiffs' claim is that Congress intended the DoS to "take a more relaxed attitude" in cases like Dr. Abdo's. In support, they cite Matter of Duchneskie, 11 I. & N. Dec. 583, 583 (B.I.A. 1966) and Matter of Coffman, 13 I. & N. Dec. 206, 206 (B.I.A. 1969), in which the DoS issued favorable recommendations and, following those recommendations, the Board of Immigration Appeals applied "a more liberal attitude" and waived the foreign residence requirements. But Plaintiffs do not carry their argument any

---

[8] Defendants acknowledge this failure in their Reply. (Defs.' Reply at 19 n.4, ECF No. 14).

further. They do not state why those decisions bind the DoS in this case, nor do they state why the DoS's different decision here creates a claim upon which the Court could grant the relief Plaintiffs seek. The Court does not find a claim here. The Court will, therefore, grant Defendants' Motion as to Count VI.

### d. Analysis Describing Change in Policy (Count VII)

Defendants argue that Plaintiffs' law firm's recent experience with ECFMG-sponsored I-612 hardship waiver cases does not plausibly support a claim regarding a change in policy. Plaintiffs counter that the Fourth Circuit has held that "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed." (Pls.' Opp'n at 16–17). The Court agrees with Defendants.

Plaintiffs cite <u>Larus & Brother Co. v. F.C.C.</u> for the proposition that "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." <u>Larus</u>, 447 F.2d 876, 879 (4th Cir. 1971) (quoting <u>Greater Bos. Tel. Corp. v. FCC</u>, 444 F.2d 841, 852 (D.C. Cir. 1970)). Even if that holding applies to Plaintiffs' circumstances, Plaintiffs do not cite to any case that states an agency's failure to supply such reasoning creates an independent cause of action. The Court will, therefore, grant Defendants' Motion as to Count VII.

### e. Violation of Treaty (Count VIII)

Defendants argue that the International Covenant on Civil and Political Rights ("ICCPR") is not judicially enforceable. Plaintiffs assert that Defendants' failure to comply with the ICCPR is enforceable via mandamus. The Court is not persuaded.

The Supreme Court has not recognized any private right of action under the ICCPR. Muwwakk'el v. Haefner, No. RDB-14-666, 2015 WL 727946, at *3 (D.Md. Feb. 18, 2015); see Sosa v. Alvarez-Machain, 542 U.S. 692, 735 (2004) ("[T]he United States ratified the [ICCPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts."); see also Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 968 (4th Cir. 1992) ("International treaties are not presumed to create rights that are privately enforceable."). The Supreme Court's pronouncements on this subject prohibit the mandamus remedy Plaintiffs seek. As a result, the Court will grant Defendants' Motion as to Count VIII.

### f.    Declaratory Judgment (Count IX)

Count IX largely repeats the allegations and earlier counts of the Complaint, requesting that the Court make some twenty declarations under 28 U.S.C. § 2201. Defendants do not explicitly address Count IX in their Motion. The Court, therefore, will grant Defendant's Motion as to Count IX to the extent that the Court has dismissed substantially similar claims for relief in the other counts. The Court will otherwise deny the Motion as to Count IX.

### III. CONCLUSION

For the foregoing reasons, the Court granted Plaintiffs' Motion to Alter Judgment to Consider and Adjudicate Counts II–IX of the Plaintiff's Complaint (ECF No. 16) in its March 28, 2019 Order (ECF No. 23). Upon reconsideration, the Court will grant Defendants' Motion to Dismiss (ECF No. 10) as to Counts II, V, VI, VII, and VIII; deny it

as to Counts III and IV; and grant it in part and deny it in part as to Count IX. A separate

Order follows.

Entered this 30th day of April, 2019.


_____/s/_____
George L. Russell, III
United States District Judge