**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ALAIN ABDO, et al., | * |
| Plaintiffs, | * |
| | * |
| v. | *      Civil No.: BPG-17-1053 |
| | * |
| MIKE POMPEO, et al., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Alain Abdo ("Abdo"), his wife, Maha Akiki ("Akiki"), and their two U.S. citizen minor children, J.A. and S.A., (collectively, "plaintiffs") bring this action against government defendants Mike Pompeo, United States Secretary of State; Tom Parillo, Chief, Waiver Review Division, U.S. Department of State; Kevin K. McAleenan, Acting Secretary of Homeland Security; Kenneth T. Cuccinelli, Acting Director, U.S. Citizenship and Immigration Services ("USCIS"); Kathy A. Baran, Director, California Service Center, USCIS; and William P. Barr, Attorney General of the United States (collectively, "defendants") alleging that defendants violated the Administrative Procedure Act ("APA") and plaintiffs' right to due process in the adjudication of Abdo's J-1 exceptional hardship waiver. (ECF No. 28 at 22–25). Plaintiffs additionally seek declaratory judgment that: (1) the State Department did not have authority to promulgate 22 C.F.R. § 41.62(c)(4); (2) 22 C.F.R. § 41.62(c)(4) and the Department of Homeland Security's ("DHS") conforming act, 8 C.F.R. § 212.7(c)(4), violate the APA; (3) Akiki is not subject to the two-year foreign residence requirement; (4) and that J.A. and S.A. have fundamental rights to life, family unity with their parents, and residence in the United

States.  (Id. at 25–26).   Currently pending before the court are:  (1) Defendants' Motion for

Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c) ("Defendants' Motion

for Judgment on the Pleadings") (ECF No. 45); (2) Plaintiffs' Motion to Convert Defendants'

Motion For Judgment on the Pleadings Under Federal Rule Of Civil Procedure 12(c) into a

Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 ("Plaintiffs' Motion to

Convert") or in the Alternative Plaintiffs' Cross Motion for Judgment on the Pleadings Under

Federal Rule of Civil Procedure 12(c) ("Plaintiffs' Cross Motion for Judgment on the

Pleadings") (ECF No. 48); (3) Defendants' Opposition to Plaintiffs' Cross Motion for Judgment

on the Pleadings Under Federal Rule of Civil Procedure 12(c) and Reply in Support of

Defendants' Motion for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

("Defendants' Opposition") (ECF No. 57); (4) Plaintiffs' Reply in Support of Their Motion for

Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c) ("Plaintiffs' Reply")

(ECF No. 60); (5) Defendants' Opposition to Plaintiffs' Motion to Convert Defendants' Motion

for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c) into a Motion for

Summary Judgment Under Federal Rule of Civil Procedure 56 ("Defendants' Opposition to

Motion to Convert") (ECF No. 54); (6) Plaintiffs' Reply in Support of Motion to Convert

Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment

("Plaintiffs' Reply to Motion to Convert") (ECF No. 56); (7) Plaintiffs' Motion for Leave to File

Second Amended Complaint Under Federal Rule of Civil Procedure 15(a)(2) ("Motion for

Leave") (ECF No. 49); (8) Defendants' Opposition to Plaintiffs' Motion for Leave to File Their

Second Amended Complaint ("Opposition to Motion for Leave") (ECF No. 53); (9) Plaintiffs'

Reply in Support of Motion for Leave to File Their Second Amended Complaint ("Reply to

Motion for Leave") (ECF No. 55).  The issues are fully briefed, and no hearing is necessary.

Loc. R. 105.6.  For the reasons stated below, Defendants' Motion for Judgment on the Pleadings

(ECF No. 45) is granted, Plaintiffs' Cross Motion for Judgment on the Pleadings (ECF No. 48) is

denied, Plaintiffs' Motion to Convert (ECF No. 48) is denied, and Plaintiffs' Motion for Leave

(ECF No. 49) is denied.

## I.      BACKGROUND

Abdo, a native and citizen of Lebanon, was admitted to the United States on a J-1

nonimmigrant exchange visitor visa to undertake a residency program in general surgery.  (ECF

No. 28 ¶¶ 1, 27).  Abdo's wife, Akiki was admitted to the United States two years after Abdo,

under a J-2 nonimmigrant exchange visitor visa, as the spouse accompanying or following to join

Abdo, the J-1 nonimmigrant exchange visitor visa holder.  (Id. ¶¶ 24, 29).  A condition of this

visa is that the J-1 visa holder must return to and reside in his home country for two years before

he is eligible to apply for an immigrant visa or lawful permanent residence in the United States.

(Id. ¶¶ 20–24).  Under DHS regulation 8 C.F.R. § 212.7(c)(4) and Department of State regulation

22 C.F.R. § 41.62(c)(4), if the J-1 beneficiary is subject to the two-year foreign residency

requirement, the J-2 visa beneficiary is also subject to the two-year foreign residency

requirement.  (Id. ¶ 24).

Abdo requested a waiver of the two-year foreign residency requirement under 8

U.S.C.§ 1182(e), asserting that his U.S. citizen children would face exceptional hardship if

required to return to Lebanon.  (Id. ¶¶ 25, 46, 49).  Abdo filed for this waiver and USCIS, a

component of DHS, determined that Abdo's return to Lebanon would result in the requisite level

of hardship to the children to qualify for a waiver of the two-year foreign residency requirement.

(Id. ¶ 50).   Abdo's waiver application was then reviewed by the State Department, which recommended that the waiver request be denied.   (Id. ¶¶ 55, 63).   As a result, USCIS issued a final determination denying Abdo's waiver request.   (Id. ¶ 79).   After the denial of Abdo's waiver, plaintiffs returned to Lebanon.   (Id. ¶ 95).   Shortly after plaintiffs' return to Lebanon, Abdo returned to the United States for a brief time to complete his board exams.   (Id.)   While Abdo was temporarily in the United States, a third U.S. citizen child of Abdo and Akiki died in an accident in Lebanon.   (Id.)

The parties' pending cross motions for judgment on the pleadings pertain to plaintiffs' First Amended Complaint (ECF No. 28).   In the court's earlier opinion on defendants' Motion to Dismiss (ECF No. 10), the court noted that plaintiffs made a broader argument in their reply than in their Complaint (ECF No. 1), alleging that the State Department lacked authority to promulgate 22 C.F.R. § 41.62(c)(4).   (ECF No. 24 at 9–10).   The court declined to consider the allegation at that time because it was not in the Complaint.   (Id. at 10).   After resolution of the Motion to Dismiss, the court approved a Stipulation that would permit plaintiffs to raise this broader argument in an Amended Complaint.   (ECF No. 27).   Plaintiffs then filed their First Amended Complaint.

Plaintiffs' First Amended Complaint consists of four counts.   (ECF No. 28 at 22–26).   In Count I, plaintiffs allege that the State Department did not engage in formal rulemaking for 22 C.F.R. § 41.62(c)(4) and USCIS did not engage in formal rulemaking for its conforming regulation, 8 C.F.R. § 212.7(c)(4).   (Id. at 22–23).   Plaintiffs allege that the State Department did not have the authority to promulgate 22 C.F.R. § 41.62(c)(4), and the DHS conforming regulation, 8 C.F.R. § 212.7(c)(4), was based on a regulation that the State Department did not

4

have authority to promulgate. (Id. at 23). In Counts II and III, plaintiffs allege due process violations. (Id. at 24–25). The court did not dismiss Counts II and III in defendants' earlier Motion to Dismiss because "[d]efendants never directly address[ed] whether there are due process rights to life or family unity, and, if so, whether [d]efendants violated them." (ECF No. 24 at 19). In Count IV, plaintiffs seek declaratory judgment that: (1) the State Department did not have authority to promulgate 22 C.F.R. § 41.62(c)(4); (2) 22 C.F.R. § 41.62(c)(4) and the DHS conforming act, 8 C.F.R. § 212.7(c)(4), violate the APA; (3) Akiki is not subject to the two-year foreign residence requirement; (4) and that J.A. and S.A. have fundamental rights to life, family unity with their parents, and residence in the United States. (ECF No. 28 at 25–26).

## II.      CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS

### A.  Standard of Review

"A court reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) applies the same standard applicable to motions made under Rule 12(b)(6)." Puffinberger v. Commercion, LLC, 2014 WL 120596, at *2 (D. Md. Jan. 10, 2014); see Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Id. (quoting Edwards, 178 F.3d at 244).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. See Venkatraman v. REI Sys., Inc.,

417 F.3d 418, 420 (4th Cir. 2005).  A complaint need only state "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Rule 12(d), a motion for judgment on the pleadings is converted into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  "Matters—such as exhibits—are outside the pleadings if a complaint's factual allegations are not expressly linked to and dependent upon such matters."  Williams v. Branker, 462 F. App'x 348, 352 (4th Cir. 2012).

### B. Discussion

#### 1. Conversion of Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment

In their Motion to Convert (ECF No. 48), plaintiffs assert that Defendants' Motion for Judgment on the Pleadings should be converted into a motion for summary judgment because defendants rely on documents outside the pleadings in their legal arguments regarding Counts II–IV.  (ECF No. 48-1 at 9–10).  Specifically, plaintiffs contend that defendants rely on facts that were unavailable to plaintiffs because defendants have not produced a Certified Administrative Record.  (Id. at 11).  As a result, plaintiffs request that Defendants' Motion for Judgment on the Pleadings either be denied under Federal Rule of Civil Procedure 56(d)(1), with the parties directed to conduct a discovery conference, or the court defer considering Defendants' Motion

for Judgment on the Pleadings and allow plaintiffs to seek discovery, including a Certified Administrative Record, under Rule 56(d)(2). (Id.)

Defendants, on the other hand, argue that plaintiffs' position has no merit because the documents cited in Defendants' Motion for Judgment on the Pleadings were filed over two years ago with defendants' Motion to Dismiss. (ECF No. 54 at 1). Defendants note that these documents are referred to only in the factual background section of Defendants' Motion for Judgment on the Pleadings and plaintiffs' First Amended Complaint presents "purely legal issues whose resolution does not depend on the factual background information contained in these documents." (Id. at 3). As a result, defendants assert that the court need not consider the background information contained in these documents to rule on Defendants' Motion for Judgment on the Pleadings. (Id. at 4).

Here, Defendants' Motion for Judgment on the Pleadings is supported by three documents originally filed as Exhibits A, B, and C to defendants' earlier Motion to Dismiss. (ECF No. 45-1 at 13–14). As defendants note, however, these documents are not integral to evaluating the legal issues relating to plaintiffs' First Amended Complaint. (ECF No. 54 at 3). Accordingly, as defendants suggest, the court will not consider the background information contained in these documents. Because the court will not consider matters outside of the pleadings, Defendants' Motion for Judgment on the Pleadings will not be construed as a motion for summary judgment, see Fed. R. Civ. P. 12(d), and Plaintiffs' Motion to Convert (ECF No. 48) is denied.

      **2.**  **Count I – Rulemaking and Violation of the Administrative Procedure Act**

In Count I, plaintiffs allege that the State Department violated the APA because they did not engage in formal rulemaking for 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4). (ECF No. 28 at 22–23). Plaintiffs additionally allege that the State Department did not have authority to promulgate 22 C.F.R. § 41.62(c)(4), which requires the J-2 visa beneficiary to also comply with the two-year foreign residency requirement if the J-1 beneficiary is subject to the two-year foreign residency requirement. (Id. at 23).

Defendants argue that the court already effectively disposed of Count I when it ruled that 22 C.F.R. § 41.62(c)(4) is a reasonable construction of 8 U.S.C. § 1182(e). (ECF No. 45-1 at 23–24). Defendants contend that 8 U.S.C. § 1182(e) "is silent as to whether J-2 visa holders are subject to the Two-Year Foreign Residency Requirement," and where Congress leaves a gap, "the law contemplates gap-filling by the agency entrusted with administering the statute." (Id. at 25). Defendants maintain that the Secretary of State is charged with "the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States" under 8 U.S.C. § 1104(a). (Id. at 26 (citing 8 U.S.C. § 1104(a)). Therefore, defendants contend that the State Department is properly entrusted with administering the statute. (Id. at 27–28). Defendants rely on Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984) to argue that a "reviewing court must uphold agency regulation[s] that fill[] the gap," such as those promulgated by the State Department here, "provided that the regulation is a permissible construction of the statute," which this court previously decided. (ECF No. 45-1 at 25 (citing Chevron, 467 U.S. at 843)).

Plaintiffs disagree, arguing that this claim is properly before the court because, after its

earlier ruling, the court permitted plaintiffs to raise this argument in an amended complaint. (ECF No. 48-1 at 18).  Plaintiffs maintain that in its earlier ruling this court merely found that this claim was not alleged in the initial Complaint and, as a result, the court declined to consider it.  (Id.)  Moreover, plaintiffs contend that the State Department does not have the authority to promulgate 22 C.F.R. § 41.62(c)(4) because the State Department's functions under 8 U.S.C. § 1182(e) are constrained to determining what fields should be included on the skills list for this exchange program and providing a recommendation on a waiver of the two-year foreign residency requirement.  (Id. at 20–23).

As defendants note, this court has already decided that the State Department is charged with the administration of 8 U.S.C. § 1182(e) and that 22 C.F.R. § 41.62(c)(4) is a reasonable construction of that statute.  (ECF No. 24 at 15–16).  In the court's earlier opinion, Judge Russell concluded that at step one of Chevron, the "plain language [of 8 U.S.C. § 1182(e)] is silent with respect to the specific issue of the applicability of the two-year foreign residence requirement to J-2 visa holders."  (Id. at 13).  The court then concluded, at the second Chevron step, that the "[State Department], and then USCIS, issued regulations that made J-2s subject to the two-year foreign residency requirement, which is consistent with the statute that makes J-1s subject to the same requirement and is silent with respect to J-2s."  (Id. at 16).  The court concluded that because the plain language of 8 U.S.C. § 1182(e) was silent on the issue, and the "[State Department] and USCIS interpretation is reasonable, . . . the Court must uphold it."  (Id.) Because this court has already determined that 22 C.F.R. § 41.62(c)(4) is a reasonable construction of 8 U.S.C. § 1182(e), it follows that the State Department acted within its authority when it promulgated C.F.R. § 41.62(c)(4).  Accordingly, Count I of plaintiffs' First Amended

Complaint is dismissed.

Even if the court assumes that a reevaluation of the APA rulemaking claim is proper based on plaintiffs' First Amended Complaint, the claim still fails.  The United States District Court for the District of Columbia considered this question in Raoof v. Sullivan, 315 F. Supp. 3d 34 (D.D.C. 2018).  There, the court noted that the "rule making section of the APA does not apply when the rule 'involve[s] . . . a military or foreign affairs function of the United States,' 5 U.S.C. § 553(a), and the notice and comment requirements do not apply to 'rules of agency organization, procedure, or practice.' Id. at § 553(b)(A)."  Raoof, 315 F. Supp. 3d at 43.  The State Department explicitly invoked this foreign affairs exemption when promulgating the two-year foreign residence requirement.  Id. at 43–44 (quoting 37 Fed. Reg. 17471).  The Raoof court also concluded that "USCIS did not need to follow the APA's rule making procedures when it adopted a conforming regulation" because "[a]dopting the same rule simply made 'agency . . . procedure[] or practice' consistent across agencies."  Id. at 44.  As defendants note, this same reasoning applies to 8 C.F.R. § 212.7(c)(4).  (ECF No. 45-1 at 32).  Because the State Department had the authority to promulgate 22 C.F.R. § 41.62(c)(4) and the APA's rulemaking procedures do not apply to either 22 C.F.R. § 41.62(c)(4) or 8 C.F.R. § 212.7(c)(4), plaintiffs do not state a plausible claim upon which relief can be granted.

### 3.  Count II – Due Process Violation (Right to Life)

In Count II, plaintiffs claim that the denial of Abdo's waiver application violates their Fifth Amendment right to due process and their fundamental right to life because Lebanon is dangerous and being there would threaten the lives of all plaintiffs.  (ECF No. 28 at 24).  Plaintiffs argue that substantive due process rights exist when related to "personal

choices . . . central to personal dignity and autonomy," (ECF No. 48-1 at 25 (quoting Planned

Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 851 (1992)), or when the right asserted is

"objectively, 'deeply rooted in this Nation's history and tradition'" "such that neither liberty nor

justice would exists if [it] were sacrificed." (Id. (quoting Washington v. Glucksberg, 521 U.S.

702, 720–21, (1997)). Plaintiffs further contend that the government has a deeply rooted duty to

protect its citizens and the denial of Abdo's hardship waiver violated this duty as to the

qualifying relatives in this case, that is, plaintiffs' minor children. (Id. at 29).

Defendants argue that plaintiffs fail to state a claim for which relief can be granted in

Count II of their First Amended Complaint. (ECF No. 45-1 at 32–36). Defendants contend that

to succeed on a due process claim, plaintiffs must show the existence of a protected property or

liberty interest and, as a threshold matter, the court must examine the arbitrariness of the

challenged action (i.e., "whether the challenged conduct was 'so egregious, so outrageous, that it

may fairly be said to shock the contemporary conscience'"). (Id. at 33 (quoting Stone v. Trump,

400 F. Supp. 3d 317, 356 (D. Md. 2019)). Defendants maintain that the action in question, the

denial of Abdo's waiver application, is not "conscience shocking." (Id. at 34). Further,

defendants argue that the Due Process Clause acts as a limitation on the government's power to

act and not as a guarantee of minimal levels of safety and security. (Id. at 34–35 (citing

DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195–97 (1989)).

When the challenged conduct involves executive action, as it does here, the court must

first address the threshold question asking whether the conduct was "'so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience.'" Hawkins v.

Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833,

847 n.8 (1998)).  To meet this standard, the executive conduct must be "intended to injure in

some way unjustifiable by any government interest."  Lewis, 523 U.S. at 849.  The challenged

conduct must also be carefully reviewed in light of the circumstances.  Waybright v. Frederick

Cty., MD, 528 F.3d 199, 205 (4th Cir. 2008) (citing Lewis, 523 U.S. at 850).

Here, the challenged executive conduct is the denial of Abdo's waiver application.  This

action is not conscience shocking.  Plaintiffs list possible consequences of the waiver denial, but

these consequences are conjectural and do not cause the waiver denial to rise to the level of

"conscience shocking."  As defendants note, the Due Process Clause prevents the government

from depriving individuals of life, liberty, or property without due process of law, but it is not an

obligation on the government to ensure no harm befalls a U.S. citizen.  (ECF 45-1 at 35 (citing

Graves v. Lioi, 930 F.3d 307, 319 (4th Cir. 2019), cert. denied sub nom. Robinson v. Lioi, 140 S.

Ct. 1118 (2020)).   Plaintiffs have not identified, nor provided any authority identifying, a

colorable liberty or property interest that the government has denied them.  Accordingly, Count

II is dismissed.[1]

### 4.   Count III – Due Process Violation (Right to Family Unity)

In Count III of their First Amended Complaint, plaintiffs claim that the U.S. citizen

plaintiffs, both minor children, have a fundamental right to family unity with their parents and a

fundamental right to live in the United States.  (ECF No. 28 at 25).  Plaintiffs argue that while

---

[1] Plaintiffs additionally challenge the process by which the executive agencies adjudicated their waiver application.  (ECF No. 28 ¶¶ 62–80).  The decision to grant or deny a § 1182(e) waiver application is discretionary and "committed to agency discretion by law."  Raoof, 315 F. Supp. 3d at 45 (quoting Slyper v. Attorney Gen., 827 F.2d 821, 823 (D.C. Cir. 1987)).  While the court in Slyper left open the possibility that these types of decisions may be subject to review in some situations, a claim that the agency abused its discretion is not one of those situations.  Id. at 41.  Because there is no "'meaningful standard against which to judge the agency's exercise of discretion,'" the waiver application denial is unreviewable by this court under the APA.  Id. (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)).

8 U.S.C. § 1182(e) is not facially unconstitutional because it does not require qualifying relatives of an exchange visitor to return to the home country, it may be applied unconstitutionally in particular cases.   (ECF No. 48-1 at 33).   Plaintiffs maintain that this statute is applied unconstitutionally here because, due to their age, the children have no real choice to remain in the United States.  (Id. at 34–35).

Defendants, on the other hand, argue that plaintiffs fail to state a claim upon which relief may be granted because plaintiffs offer no authority to support their claim that the denial of Abdo's waiver will deprive the U.S. citizen plaintiffs of their right to family unity and to remain in the U.S.  (ECF No. 57 at 10).  Defendants assert that the Fourth Circuit has "never recognized a 'right to family unity' that encompasses a child's right to live near their parents in the immigration context."   (Id. (citing Reyna v. Hott, 921 F.3d 204, 210 (4th Cir. 2019)).   As a result, defendants argue "that a U.S. citizen child suffers no cognizable constitutional injury when the government requires a parent who lacks lawful immigration status to depart the United States, even if the child must accompany the parent due to their minority" age.  (Id. at 11 (citing Gallanosa v. United States, 785 F.2d 116, 120 (4th Cir. 1986)).

Indeed, the Fourth Circuit and the other circuits which have addressed the issue have "uniformly held that deportation of the alien parents does not violate any constitutional rights of the citizen children." Gallanosa, 785 F.2d at 120 (referring to Newton v. Immigration and Naturalization Service, 736 F.2d 336, 342–43 (6th Cir.1984); Ayala-Flores v. Immigration and Naturalization Service, 662 F.2d 444, 445–46 (6th Cir.1981) (per curiam); Acosta v. Gaffney, 558 F.2d 1153, 1157–58 (3d Cir.1977); Gonzalez-Cuevas v. Immigration & Naturalization Service, 515 F.2d 1222, 1224 (5th Cir.1975)).  Moreover, the Fourth Circuit has not found a

"substantive due process right to family unity in the context of immigration detention pending removal." Reyna, 921 F.3d at 210.

The claim made in Gallanosa was factually similar to the one made by plaintiffs here. There, plaintiffs claimed that the deportation of the alien parents would result in a "de facto deportation of the citizen child, . . . thereby denying [the child's] constitutional rights as an American citizen." Gallanosa, 785 F.2d at 120.  The Fourth Circuit rejected that argument, and concluded that the deportation of the parents "could violate no constitutional rights enjoyed by [the child] by virtue of her United States citizenship." Id.  Accordingly, plaintiffs' claim that the U.S. citizen plaintiffs have a fundamental right to family unity with their parents and a fundamental right to live in the United States must be denied.

### 5.  Count IV – Declaratory Judgment

In Count IV of their First Amended Complaint, plaintiffs request declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, based on the merits of Counts I, II, and III.  (ECF No. 28 at 25–26).  With regard to Count I, plaintiffs request that the court declare that the State Department did not have authority to promulgate 22 C.F.R. § 41.62(c)(4), invalidate 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4) due to the rulemaking violations of the APA, and declare that Akiki is not subject to the two-year foreign residence requirement.  (Id. ¶¶ 121–24). With regard to Count II, plaintiffs request that the court declare the two U.S. citizen children have a right to life.  (Id. ¶ 125).  With regard to Count III, plaintiffs request that the court declare that the two U.S. citizen children have a fundamental right to family unity with their parents and a fundamental right to reside in the United States, and find that the USCIS and State Department's waiver review division's policy violates these fundamental rights.  (Id. ¶¶ 125–27).

Defendants contend that declaratory relief may only be granted if an actual controversy exists, and here there is none.  (ECF No. 45-1 at 39–40).  Therefore, defendants maintain that plaintiffs have no viable claims for declaratory relief.  (Id. at 40).  On the other hand, plaintiffs argue that the claims in Counts I–III are all viable independent claims for declaratory relief.  (ECF No. 48-1 at 37).  As a result, plaintiffs contend that Count IV is also a claim for which relief may be granted.  (Id.)

The Declaratory Judgment Act "authorizes a federal court to give a declaratory judgment only with respect to 'a case of actual controversy within its jurisdiction.'"  Delavigne v. Delavigne, 530 F.2d 598, 601 (4th Cir. 1976) (citing 28 U.S.C. § 2201(a)).  The Declaratory Judgment Act does not "provide a basis for an independent claim."  Univ. Gardens Apartments Joint Venture v. Johnson, 419 F. Supp. 2d 733, 742 (D. Md. 2006).  "Rather, [it is an] available form[] of relief, should the court otherwise have a valid cause of action before it."  Id.

Because plaintiffs' first three claims must be dismissed, there is no remaining "basis for an independent claim" for which the court can grant the relief requested by plaintiff.  Id. Accordingly, the request for declaratory relief must also be denied.  See id. (dismissing plaintiffs' request for declaratory relief because there was no remaining valid cause of action before the court).

III.   **PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

In plaintiffs' Motion for Leave, plaintiffs seek leave to file a Second Amended Complaint to assert a new cause of action relating to the rulemaking procedures at the State Department. (ECF No. 49-1 at 1).

A.  **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party is permitted to amend his pleadings with the written consent of the opposing party or by leave of the court.  Fed. R. Civ. P. 15(a)(2).   Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  Leave to amend a pleading should be denied, however, "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).  "Delay alone is an insufficient reason to deny leave to amend. . . . Rather, the delay must be accompanied by prejudice, bad faith, or futility."  Edwards, 178 F.3d at 242 (citing Johnson, 785 F.2d at 509).

## B.  Discussion

In the proposed Second Amended Complaint, plaintiffs seek to add a new cause of action relating to the rulemaking procedures at the State Department.   (ECF No. 49-1 at 5). Specifically, the proposed Second Amended Complaint includes additional factual allegations detailing the expansion of the role of the State Department in adjudicating 8 U.S.C. § 1182(e) waiver applications, including the collection of a fee from waiver applicants.  (Id. at 1, 5). Plaintiffs allege that the State Department's procedures for adjudicating § 1182(e) waivers constitute procedural rules under the APA, and these procedures are unlawful because the agency failed to comply with the publication requirements of 5 U.S.C. § 552(a).  (ECF No. 49-3 ¶¶ 121, 123).  Further, plaintiffs allege that the rule requiring a waiver application fee from applicants within the United States exceeds the statutory authority delegated to the Secretary of State by Congress in 8 U.S.C. § 1104(a).  (Id. ¶ 122).  Plaintiffs seek to add a related claim in the count for declaratory judgment, asking the court to declare that the State Department's procedures for

16

adjudicating § 1182(e) waiver applications, including the collection of an application fee, are "unlawful as applied to applicants within the United States because the[se] procedures are in excess of the Secretary of State's authority under 8 U.S.C. § 1104(a)."  (Id. ¶ 141).  In this proposed claim, plaintiffs also ask the court to enjoin the State Department from "collecting any further application fees from § 1182(e) applicants within the United States."  (Id. ¶ 142).

Plaintiffs argue that they have established good cause to amend the First Amended Complaint, the amendment would not be futile, and defendants would not be prejudiced if plaintiffs are granted leave of court to file a Second Amended Complaint.  (ECF No. 49-1 at 5). Plaintiffs maintain that they have established good cause to amend the First Amended Complaint because this proposed claim stems from defendants filing, with the court's permission, an Amended Answer to the First Amended Complaint ("Amended Answer") (ECF No. 47).  (Id.) Defendants' Amended Answer included an admission that a filing fee was required by the State Department for a form used in the waiver application beginning in 1998.  (ECF No. 47 ¶ 77). Plaintiffs argue that they could not have known about this new claim but for defendants' admission, and they acted diligently in moving to amend their First Amended Complaint within 30 days of defendants filing their Amended Answer.  (ECF No. 55 at 2).  Further, plaintiffs rely on Afato v. Clinton, Civil No. FCD/EFB S-10-60, 2010 WL 3855264 (E.D. Cal. Sept. 29, 2010), to argue that their proposed claim is not futile because that court granted plaintiffs leave "on nearly identical facts" to add a claim regarding the assessment of fees for an I-612 waiver.  (ECF No. 49-1 at 5).  Finally, plaintiffs contend that defendants would not be prejudiced if plaintiffs are granted leave of court to file a Second Amended Complaint because defendants have not yet filed the Certified Administrative Record, no discovery has taken place by either side, and a

scheduling order has not been entered.  (Id.)

Defendants, on the other hand, argue that plaintiffs' request to amend their complaint a second time "is the product of undue delay, and granting it would be highly prejudicial" to defendants.  (ECF No. 53 at 1).  Defendants contend that their Amended Answer was filed on October 15, 2019, and merely "confirmed [p]laintiffs' earlier allegations that this fee began to be charged in 1998."  (Id. at 4).  Defendants maintain that their Amended Answer did not include additional facts that plaintiffs did not already know nor did it address the statutory authority to charge the fee.  (Id.)  Therefore, defendants argue that "'the proposed amendment appears to have been an after-thought' that, at a minimum, [p]laintiffs should have included in their [F]irst [A]mended [C]omplaint," which was filed nearly six months prior to this Motion for Leave. (Id.)  Further, defendants argue that "'[c]ourts within [the Fourth] Circuit have consistently taken account of the stage of the proceedings and looked to the pendency of dispositive motions in weighing the prejudicial effect of granting amendment against the "freely given" standard of Rule 15(a).'"  (Id. (quoting Nicole v. Holy Cross Hosp. of Silver Spring, Inc., Civil No. AW-04-3039, 2005 WL 8174699, at *2 (D. Md. Sept. 8, 2005)).  As a result, defendants maintain that granting leave to plaintiffs would be highly prejudicial to defendants because both parties have already filed dispositive motions.  (Id.)

While the court should "freely give leave" to amend, leave to amend a pleading should be denied when granting leave would be prejudicial to the opposing party and the request is unduly delayed.  Edwards, 178 F.3d at 242.  Here, plaintiffs have known the facts supporting plaintiffs' new claim since they filed their initial Complaint over three years ago.  (See ECF No. 1 ¶ 35). Plaintiffs' Complaint, filed in April 2017, and First Amended Complaint, filed two years later in

June 2019, both included factual allegations about the application fee at issue in plaintiffs' proposed Second Amended Complaint. (ECF Nos. 1 ¶ 35, 28 ¶ 77). As a result, plaintiffs' request for leave to again amend their Complaint is unduly delayed. See Naden v. Saga Software, Inc., 11 F. App'x 381, 383 (4th Cir. 2001) (denying plaintiff leave to amend when the amendment was based "on facts known to [plaintiff] at the time he commenced [the] lawsuit"); Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc., 974 F.2d 502, 506 (4th Cir. 1992) (finding delay when the new theories put forth by plaintiff "were available to [plaintiff] when it first brought [the] lawsuit"); Sandcrest Outpatient Servs., P.A. v. Cumberland Cty. Hosp. Sys., Inc., 853 F.2d 1139, 1148–49 (4th Cir. 1988) (denying a second motion to amend the complaint where the motion came eight months after filing the initial complaint and five months after the first motion for leave to amend the complaint).

Moreover, granting plaintiffs' Motion for Leave would be prejudicial to defendants.[2] Although no discovery has occurred and no scheduling order has been issued, the court has before it now dispositive motions, and responses to those motions, from both parties. (ECF Nos. 45, 48, 57, 60). Allowing plaintiffs to amend their complaint again would require additional briefing from both parties and delay resolution of this case. In addition, allowing plaintiffs to amend their complaint a second time, in this instance, would further enable plaintiffs to try their case "one claim at a time," which the Fourth Circuit has stated is "both unfair to the opposing party and inefficient for the judicial system." Omni, 974 F.2d at 506. Because the core facts

---

[2] With regard to plaintiffs' reliance on Afato, this court concludes that the Afato case is factually distinguishable, and, therefore, not persuasive. Although the Afato court found that the claim regarding the assessment of fees for an I-612 waiver was a cognizable claim, it also found that there was "no conceivable prejudice to defendants" in allowing the amendment because plaintiffs acted promptly and diligently. Afato, 2010 WL 3855264, at *3. Here, plaintiffs' request for leave to amend is unduly delayed and granting leave at this stage would be prejudicial to defendants.

pertinent to this new claim have been known to plaintiffs for over three years and have been included in each complaint, granting leave at this stage of the proceedings to include a new claim based on these facts would be prejudicial to defendants and must be denied.

## IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (ECF No. 45) is GRANTED, Plaintiffs' Cross Motion for Judgment on the Pleadings (ECF No. 48) is DENIED, Plaintiffs' Motion to Convert (ECF No. 48) is DENIED, and Plaintiffs' Motion for Leave (ECF No. 49) is DENIED.  A separate order will be issued.


Date:   May 22, 2020                                    _____/s/_____
                                                        Beth P. Gesner
                                                        Chief United States Magistrate Judge